IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MATTHEW LEONARD, ) | |
| On behalf of himself and all others ) | |
| Similarly situated, ) | |
| ) | |
| Plaintiff(s), ) | No. 2:15-cv-04139-NKL |
| ) | |
| v. ) | |
| ) | |
| DELAWARE NORTH COMPANIES ) | |
| SPORT SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Defendant Delaware North Companies Sport Services, Inc. moves for transfer of venue to the Eastern District of Missouri. [Doc. 5.] The motion is granted.

**I.       Background**

This case is a putative class action. Plaintiff Matthew Leonard claims Delaware North violated the federal Fair Labor Standards Act and Missouri law by failing "to pay minimum wage to persons who work concession stands to service patrons of Major League Baseball." [Doc. 1, p. 5.]

Leonard filed the case in the Circuit Court of Cole County, Missouri, and Delaware North removed it to federal court. As relevant to Delaware North's motion to transfer venue, Leonard alleges in the Complaint:

> 1. Defendant is a for-profit corporation that runs the vending services for Busch Stadium and Kauffman Stadium, among other venues. Each one of the baseball games has allowed laborers, called "volunteers," to work in the vending services operated by Defendant in order to operate concession stands that serve the patrons of these Major League Baseball stadiums. These "volunteers" were

recruited under the auspices [that] they were raising money for various non-profit organizations of their choice. While these laborers provided Defendant with the veneer of community service, Defendant is, in fact, exploiting a volunteer labor force to avoid paying for necessary labor, a privilege not afforded for-profit companies under the Fair Labor Standards Act.

\*\*\*

3. Plaintiff at all times relevant hereto, was a resident of the State of Missouri. On May 30, 2013, Plaintiff offered his time and efforts, purportedly as a volunteer, at Busch Stadium operating concession stands. Plaintiff has consented to join, and his consent to join is attached hereto as Exhibit "A."[1]

4. Defendant is a for-profit Delaware Corporation, with its principal place of business in the State of Missouri.

5. Defendant owns and operates the vending services at Busch Stadium and Kauffman Stadium, which operate and service patrons for 81 annual games at each location and multiple other events.

6. All events and occurrences mentioned herein occurred in the State of Missouri, and therefore venue is proper in the State of Missouri.

7. Venue is proper in the Circuit Court of Cole County, Missouri as it is a State court of competent jurisdiction as defined in section 16(b) of the Fair Labor Standards Act.

\*\*\*

9. The Major League Baseball stadiums at issue in this case are year round venues which host a variety of non-baseball related events throughout the year. By way of example, Busch Stadium hosts professional soccer tournaments, wedding receptions and concert series throughout the year.

---

[1] Exhibit A is an affidavit signed by Leonard. His contact information, including physical address, is redacted.

> 10. Plaintiff brings this action for himself individually and as representative of a class of all other similarly situated plaintiffs. Plaintiff intends to seek certification as a class action for class of individuals who worked without being paid minimum wage in the last three (3) years, purportedly as volunteers, for Defendant's vending services in the State of Missouri.
>
> ***

[*Id.* at pp. 5-6.] Leonard served the Complaint on Delaware North's registered agent, who is located in Clayton, Missouri. [Doc. 5-1, p. 2.]

Delaware North submitted the affidavit of Stephen Nowaczyk, its Vice President of Finance, as an exhibit to its motion to transfer. [Doc. 5-2.] Nowaczyk states that Delaware North is a corporation organized under New York law, and its principal place of business and corporate headquarters are located in New York. An indirect subsidiary of Delaware North operates concessions at Busch Stadium in St. Louis Missouri, but neither Delaware North, nor its indirect subsidiary, nor any of its affiliates, owns or operates concessions or volunteer services at Kauffman Stadium. Nowaczyk also states that to the best of his knowledge, information, and belief "virtually all" of the individuals who work at Busch Stadium, including those participating in concession operations and providing volunteer services, live in St. Louis or the geographic area near Busch Stadium. [*Id.*]

Leonard does not dispute Nowaczyk's affidavit. Leonard states in his suggestions in opposition to transfer that according to Delaware North's website, the company is the food and beverage operator at Hammons Field in Springfield, Missouri, as well as at Busch Stadium and the Edward Jones Dome in St. Louis, Missouri. [Doc. 12, p. 9.]

Delaware North submitted the affidavit of Glenn Hart, its Director of Finance, with its reply suggestions. [Doc. 18-1.] Hart states that Hammons Field is a minor league baseball

3

stadium, with capacity for approximately 9,250 spectators, and that during the relevant time period, had an average turnstile attendance of 3,245 individuals per event, and 5 to 7 licensed food and beverage locations per year. Busch Stadium is a major league baseball stadium, with capacity for approximately 46,588 spectators, average turnstile attendance of 38,023 per event, and 52 licensed food and beverage locations per year. The Edward Jones Dome, the home of a National Football League team, has capacity for approximately 65,600 spectators, average turnstile attendance of 38,736 per event, and 47 to 55 licensed food and beverage locations per year. The level of staffing provided and the number of concession stands operated at each stadium at each event depends on the spectator attendance projected for the event. [*Id.*]

## II. Discussion

Delaware North argues that venue in the Western District of Missouri is improper and transfer is therefore required under 28 U.S.C. § 1406(a) to cure the defect. Alternatively, Delaware North argues that transfer should be ordered under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interests of justice.

Sections 1406 and 1404, which govern the transfer of venue, apply to actions removed to federal court. 28 U.S.C. § 1390(c) ("This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts."). *See also* 14D *Wright & Miller, Federal Practice and Procedure: Jurisdiction*, § 3806 ("The general venue statute, Section 1391, does not apply in actions removed to federal court from state court."). Section 1406(a) provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Section

1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding a request to transfer venue, a court may consider undisputed facts presented through affidavits or other relevant documents. *See Finn v. Moyes*, 2015 WL 505750, at *4 (D. Minn. Feb. 6, 2015) (citing cases).

The parties disagree about how § 1406(a) operates with respect to removed cases. The Court need not address this issue because it finds that transfer is appropriate under § 1404(a).

A motion under § 1404(a) requires a court to consider: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). But a court is not limited to these factors and can make "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id. See also Houk v. Kimberly–Clark Corp.,* 613 F. Supp. 923, 927 (W.D. Mo. 1985) (a court may consider "a myriad of factors, including the convenience of the parties, the convenience of the witnesses, the availability of judicial process to compel the attendance of unwilling witnesses, the governing law, the relative ease of access to sources of proof, the possibility of delay and prejudice if a transfer is granted, and practical considerations indicating where the case can be tried more expeditiously and inexpensively"). The party seeking transfer must make a clear showing that the balance of interests weighs strongly in favor of the proposed transfer. *Id.* Whether to grant or deny a motion for change of venue is within the trial court's discretion. *In re Apple, Inc.,* 602 F.3d 909, 912 (8th Cir. 2010).

The factors of convenience of the parties and the witnesses weigh strongly in favor of transfer. Leonard, the named plaintiff and putative class representative, works at Busch Stadium.

He did not disclose whether he lives in or near St. Louis. But Delaware North's Vice President of Finance stated in his affidavit that virtually all individuals who work concessions at Busch Stadium reside in St. Louis or the geographic area near the stadium, which Leonard did not dispute. The Court sees no reason to assume Leonard lives within the area encompassed by the Western District when he works at Busch Stadium.[2]

Leonard argues there are members of the putative class located in the Western District because Delaware North operates and staffs concessions at Hammons Field. Leonard did not plead that the Hammons Field concessions are operated and staffed in the same allegedly unlawful manner as they are at Busch Stadium. He did not in fact identify Hammons Field as one of "[t]he Major League Baseball stadiums at issue in this case" [Doc. 1, p. 6, ¶ 9][3], nor in any other way in the Complaint, and has not sought leave to amend the Complaint.

Delaware North argues that when determining venue for a putative class action, only the allegations relating to the named representative are properly considered in any event. *See Cook v. UBS Fin. Svs., Inc.,* 2006 WL 760284, at * 6 and n.2 (S.D.N.Y. Mar. 21, 2006) (transfer ordered under § 1404(a); noting that while only the allegations relating to the named representative plaintiff should be considered, the putative class as a whole had a much more substantial connection to the proposed transferee forum than the forum the plaintiff chose) (and cases cited therein)). If allegations relating to Leonard are the only consideration here, the Eastern District has the only connection. But even if all of Delaware North's Missouri

---

[2] One of Leonard's attorneys is located in the Western District, in Kansas City, but that is irrelevant with respect to consideration of the convenience of parties and witnesses. *See* 35A C.J.S. Federal Civil Procedure § 551, "Convenience of the court and counsel" (updated June 2015) ("It is improper for the court to consider the convenience of counsel, which is irrelevant, in reviewing transfer of venue for convenience of the parties and witnesses[.]") (and cases cited therein).

[3] According to the Hart affidavit, Hammons Field hosts a minor league team.

operations are considered, and all of its concessions workers in Missouri are considered part of the class for purposes of the motion to transfer venue, the Eastern District has a much more substantial connection than the Western District. Delaware North operates concessions not only at Busch Stadium, but at the Edward Jones Dome in St. Louis, two locations with significantly larger numbers of patrons, corresponding to significantly more concessions and staffing, than exist at Hammons Field according to the undisputed Hart affidavit.

The convenience-of-the-witnesses factor determines the "relative ease of access to sources of proof." *Gulf Oil*, 330 U.S. at 508. This factor includes consideration of the number of essential non-party witnesses and their location. *See Graff v. Qwest Commc'ns Corp.*, 33 F.Supp.2d 1117, 1121 (D. Minn. 1999). Accessibility of records and documents is a related factor that courts consider. *Terra*, 119 F.3d at 696. To the extent that concessions at Hammons Field are a consideration, notwithstanding the silence of the Complaint, the relatively and significantly greater amount of concessions provided and patrons served in the St. Louis area lead to the conclusion that more witnesses and documents are located in the Eastern than Western District. Leonard argues that a central location—Jefferson City, Missouri—is a shorter distance for Springfield-based witnesses to travel than those in an eastern location such as St. Louis. But Leonard's proposal increases inconvenience, because it would require *all* witnesses to travel. And if, as Leonard argues without elaboration, the location of records does not matter because hard copies are unlikely to have to be physically delivered, that still does not address convenience of witnesses. Whether a plaintiff's chosen forum is somewhat convenient is not the test. Section "1404(a) provides for transfer to a more convenient forum[.]" *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.,* 931 F. Supp. 638, 641 (D. Minn. 1996). The Eastern District is substantially more convenient for witnesses overall than this District.

7

The interest of justice factors includes considerations such as: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra*, 119 F.3d at 696. Leonard argues that his chosen forum is entitled to deference. While it is true that courts generally give considerable deference to a plaintiff's choice of forum, they usually do so when the plaintiff lives in that forum. *In re Apple,* 602 F.3d at 913; *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 930 (W.D. Mo. 1985). Leonard does not live or work in the Western District of Missouri. As for the comparative costs of litigating in each forum, one of Leonard's attorneys is located in Kansas City, where Delaware North operates no concessions, and the other is located in St. Louis. Delaware North's attorneys are located in St. Louis or out of state, and as discussed above, most witnesses should be located in the Eastern District. Thus, litigating in the Eastern District should decrease costs, for both sides. The remaining factors in the *Terra* list are neutral.

Leonard argues that Delaware North filed its application for certificate of authority with "the Missouri Secretary of State's Office in Cole County." [Doc. 12, p. 4]. The *Terra* list is not exclusive. But Leonard provides no authority showing that such a filing somehow affects the outcome of a motion for transfer of venue in an action in federal court.

The Court in its discretion concludes Delaware North has made a clear showing that the balance of interests weighs strongly in favor of the proposed transfer.

## III. Conclusion

Defendant Delaware North's motion for transfer of venue [Doc. 5] is granted and this case is ordered transferred to the Eastern District of Missouri for all further proceedings.

                                                  s/ Nanette K. Laughrey
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: August 18, 2015
Jefferson City, Missouri