UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW LEONARD, ) | |
| On behalf of himself and all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15 CV 1356 CDP |
| ) | |
| DELAWARE NORTH COMPANIES ) | |
| SPORT SERVICE, INC., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Matthew Leonard worked at a concession stand owned and operated by defendant Delaware North Companies Sportservice, Inc.,[1] during one baseball game at Busch Stadium. Leonard alleges that although at the time he believed he was serving as a volunteer to raise money for Washington University in St. Louis, he now knows that he should have been compensated as an employee in accordance with the Fair Labor Standards Act and Missouri's statutory minimum wage laws. Before he began the work, Leonard signed a Volunteer Release, Waiver and Indemnification Agreement in which he agreed to submit any dispute arising from his concession stand activities to binding arbitration. DNCS

---

[1] In its motion to compel arbitration, defendant noted that it was mistakenly identified as Delaware North Companies Sport Service, Inc. in plaintiff's petition.

has filed a motion to enforce the arbitration agreement, compel individual arbitration of Leonard's claims, and dismiss this case. After careful consideration, I conclude that the arbitration agreement signed by Leonard is enforceable and that all of his claims in this case are encompassed by that agreement. Therefore, I will grant DNCS' motion to compel and will dismiss Leonard's case without prejudice.

**Background**

DNCS is a for-profit New York corporation with its principal place of business in Buffalo, New York. A subsidiary of DNCS operates concessions at Busch Stadium in St. Louis, Missouri. On May 8, 2013, Leonard executed a Volunteer Release, Waiver and Indemnification Agreement that stated, in part, as follows:

> NOTICE: By signing this Volunteer Release, Wavier, and Indemnification Agreement (the "Agreement"), you waive certain legal rights, including the right to sue. In consideration for being allowed to participate in certain volunteer fund raising and labor activities (the "Activity") at or around Busch Stadium in St. Louis, the Participant agrees as follows:
>
> [ . . . ]
>
> 5) ARBITRATION. I agree to submit any dispute arising from the activity to binding arbitration. Each party shall pay its own costs. Arbitration shall be commenced within one (1) year after the date on which any alleged claim first arose. The arbitration proceeding shall proceed exclusively in St. Louis, MO.
>
> 6) MISCELLANEOUS. In entering into this Agreement, I am not relying upon any oral or written representations other than what is set forth in this Agreement. The invalidity of any provision of this Agreement shall not affect the enforceability or effectiveness of

> any other provision. [ . . . ]

> I HAVE READ AND UNDERSTAND THIS AGREEMENT AND I AM AWARE THAT BY SIGNING THIS AGREEMENT I MAY BE WAIVING CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO SUE.

On May 30, 2013, Leonard, along with other volunteers from Washington University, staffed the DNCS concessions stand at Busch Stadium and raised $1,096.57, which was paid by DNCS or its subsidiary to the University. In addition, Leonard and the other volunteers received free admission to Busch Stadium and a free meal during the game.

Based on these activities, Leonard filed a lawsuit against DNCS in Missouri state court. DNCS removed the case to federal court.

In this lawsuit Leonard claims that DNCS improperly treated him as a volunteer when he should have been treated, and compensated as, an employee. He brings his claims as a collective action under the Fair Labor Standards Act and as a class action under Rule 23, Fed. R. Civ. P. He asserts that DNCS often staffs its concessions stands at Busch Stadium with "volunteers" who work to raise money for various non-profit organizations, but who should legally be treated as employees and paid an hourly wage. In Count I Leonard asserts a claim for failure to pay minimum wages under Section 6 of the FLSA. Count II alleges violations of Missouri's minimum wage law. In Count III Leonard brings a claim for unjust enrichment, and in Count IV he asserts a claim for fraud.

At issue now is DNCS's motion to compel arbitration and dismiss this case based on the arbitration provision contained in the agreement set out above.

## Legal Standards

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, "establishes a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4). The Court must ask "1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute falls within the scope of the arbitration agreement." *Id.*; *see also Torres*, 781 F.3d at 968.

"Because 'arbitration is a matter of contract,' whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be 'invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Torres*, 781 F.3d at 968 (quoting *Concepcion*, 563 U.S. at 339) (internal quotations omitted).

Under Missouri law, "arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration agreement is improper in light of generally applicable contract defenses . . . such as fraud, duress, or unconscionability." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. 2012) (internal citation omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Torres*, 781 F.3d at 968–69 (citing *Faber v. Menard,* 367 F.3d 1048, 1052 (8th Cir. 2004)).

An arbitration agreement's scope is interpreted liberally, with any doubts resolved in favor of arbitration. *MedCam*, 414 F.3d at 975. A district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. (internal quotations omitted).

## Discussion

Leonard argues the arbitration agreement is invalid and does not apply to his claims. Section 2 of the FAA allows arbitration agreements to be invalidated by generally applicable contract defenses. *Concepcion*, 563 U.S. at 339; *see also* 9 U.S.C. § 2. Leonard asserts that the arbitration agreement here is invalid because it

is unconscionable under Missouri law[2] and lacks legal consideration required for the formation of a contract.

Following the United States Supreme Court's decision in *Concepcion* and the Missouri Supreme Court's decision in *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. 2012), courts in Missouri reviewing an arbitration agreement for unconscionability must focus on alleged unconscionability occurring at contract formation. The United States Court of Appeals for the Eighth Circuit explained the new standard established by these cases in *Torres*, 781 F.3d at 968–69. The Eighth Circuit explained:

> Missouri courts have traditionally viewed unconscionability in the context of procedural unconscionability, i.e., the formalities of making the contract, and substantive unconscionability, i.e., the terms set forth in the contract. But because *Concepcion* "dictate[d] a review" limited to "whether state law defenses such as unconscionability impact the formation of a contract," the court's analysis would no longer focus on the traditional distinction between procedural and substantive unconscionability and would instead be "limited to a discussion of facts relating to unconscionability impacting the formation of the contract." *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n. 3 (Mo. 2012) (emphasis in original). The [*Brewer*] court went on to instruct that in future cases, Missouri courts "shall limit review of the defense of unconscionability to the context of its relevance to contract formation." *Id*.
>
> Nevertheless, the *Brewer* court also noted that "the purpose of the unconscionability doctrine is to guard against one-sided contracts, oppression [,] and unfair surprise," which may "occur during the bargaining process" or when a later dispute reveals "the objectively unreasonable terms." *Id.* at 492–93. Thus, courts may be called upon

---

[2] The parties agree that Missouri contract law applies.

> to "consider whether the terms of an arbitration agreement are unduly harsh," that is, "whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or . . . reflect an overall imbalance in the rights and obligations imposed by the contract at issue." *Id*. at 489 n. 1. In either event, the court reasoned, "it is at formation that a party is required to agree to the objectively unreasonable terms." *Id*. at 493.

*Id*. Although *Brewer* provided that unconscionability review should be limited to the contract formation stage, that court proceeded to review the substantive terms of the arbitration agreement to determine whether they were so objectively unreasonable that "no person in his senses and not under delusion" would agree to them. *Id*. at 495. And the Missouri Supreme Court has recently held that a court should look at both the procedural and substantive aspects to determine whether, "considered together, they make the agreement or provision in question unconscionable." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. 2015).

Leonard argues that the arbitration provision is procedurally unconscionable because he was never given an opportunity to consult an attorney or negotiate the agreement's terms before signing it. Yet the undisputed evidence demonstrates this is untrue, because Leonard signed the agreement on May 8, 2013, but did not volunteer at the concession stand until May 30, 2013, giving him more than sufficient opportunity to consult an attorney and review the terms before signing

it.[3] Additionally, other indications of unconscionability at the time of contract formation are absent here. The Volunteer Agreement is only a single page. The notice at the top of the page clearly informs the participant that he is waiving his right to sue. The arbitration clause is demarcated in all capital letters, and the bottom of the page notifies the participant that he is "WAIVING CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO SUE." Unlike the contract in *Brewer*, neither the agreement at issue here nor the arbitration clause is difficult to understand, and no evidence has been presented that they were non-negotiable. *See Brewer*, 364 S.W.3d at 493 ("[t]here was evidence that the entire agreement -- including the arbitration clause -- was non-negotiable and was difficult for the average consumer to understand").

To analyze unconscionability based on the substantive terms of an arbitration agreement, Missouri courts "consider whether the terms . . . are unduly harsh[,] . . . are so one-sided as to oppress or unfairly surprise an innocent party or . . . reflect an overall imbalance in the rights and obligations imposed by the contract at issue." *Eaton*, 461 S.W.3d at 433 (internal citation and quotation marks omitted). Leonard argues that the agreement here is substantively unconscionable because it requires the parties to bear their own arbitration costs, does not provide

---

[3] Leonard cannot create a sham issue of fact with a later-filed affidavit contradicting the May 8, 2013, date of the contract signed by and sued upon by him, especially given his attorney's representation that it was, indeed, Leonard's signature on the agreement, and he dated it May 8, 2013.

for a minimum recovery, and is one-sided in that it compels only Leonard to submit his claims to arbitration, leaving DNCS free to litigate its claims. He also asserts that the cost of arbitration would "swallow up" his claim and make it cost prohibitive to arbitrate. Finally, Leonard argues that because each proposed class member's individual FLSA claim is "monetarily insignificant," plaintiffs would have difficulty finding counsel to pursue their individual claims.

The FAA prohibits the Court from weighing the cost of arbitration against a claimant's potential recovery except where costs may be so high that they "constitute the elimination of the right to pursue [a] remedy." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013). In *American Express*, the Supreme Court reinforced the distinction between practical financial access to arbitration, which may be unconscionable to prohibit, and profitable access to arbitration, which is never mandatory. *Id.* at 2312.

A party seeking to avoid arbitration on the ground that it would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92 (2000). Such a party must establish more than a hypothetical inability to pay by presenting specific evidence of arbitration fees and of their own financial inability to pay those fees. *Torres,* 781 F.3d at 969. To the extent Leonard argues that arbitration of his individual claims would be cost prohibitive, he has failed to carry his burden

on this issue because he has provided no evidence of the specific costs or arbitration fees or his financial inability to afford to them. To support his argument that attorneys will be unwilling to represent plaintiffs in arbitration of their individual FLSA claims, Leonard has submitted affidavits from two employment attorneys who attest that it is unlikely a plaintiff with actual lost wages of less than $10,000 could retain counsel to pursue individual FLSA claims. But this is not an argument that it is financially *impossible* for plaintiffs to arbitrate their claims, only that it might not be a profitable proposition. Whether or not pursuing individual FLSA claims would be profitable is exactly the type of cost analysis that is prohibited when analyzing unconscionability. *American Express* 133 S. Ct. at 2312. Additionally, the FLSA awards reasonable attorneys' fees to prevailing plaintiffs, 29 U.S.C. § 216(b), making Leonard's argument here particularly unpersuasive.[4] For all of these reasons, the arbitration agreement is not unconscionable as prohibitively expensive.

Leonard also argues that the arbitration agreement is unconscionable because it compels only him to submit his claims to arbitration. The Missouri Supreme Court has held that a lack of mutuality with regard to an arbitration agreement is not unconscionable so long as there is proper consideration as to the

---

[4] DNCS has also countered Leonard's evidence by providing an affidavit from an employment attorney who attests that he has defended multiple cases in Missouri in which the plaintiff was represented by counsel on individual FLSA claims with lost wage damages of less than $10,000.

whole agreement. *See Eaton*, 461 S.W.3d at 433-34. As discussed later, there was proper consideration exchanged by both parties sufficient to support the volunteer agreement, therefore, Leonard's unilateral agreement to arbitrate was not unconscionable.[5]

Similarly, "a fee-shifting provision by itself does not make an arbitration agreement unenforceable." *Faber*, 367 F.3d at 1053. In *Faber*, the Eighth Circuit held that a fee-splitting arrangement may be unconscionable if the party seeking to avoid arbitration provides "information specific to the circumstances [indicating] that fees are cost-prohibitive." *Id*. As discussed above, Leonard has provided no specific evidence showing that the costs or fees of arbitration are cost-prohibitive for him, so the mere fact that the agreement requires him to bear his own costs of arbitration is not sufficient to render it unconscionable.

Finally, the arbitration clause's silence as to attorneys' fees and the lack of a minimum recovery provision are not sufficient by themselves to render the agreement one that "no person in his senses and not under delusion would make." *Brewer*, 364 S.W.3d at 495.

For all of the reasons stated above I conclude that Leonard has not

---

[5] To the extent Leonard has analogized his unilateral arbitration obligation to the one in *Brewer*, they are distinguishable. In *Brewer*, the Court found that the unilateral arbitration obligation was "particularly onerous" because it permitted the defendant to remedy the plaintiff's default by seeking judicial or self-help repossession of the collateral (the plaintiff's vehicle), while limiting plaintiff to arbitration. Here, there is no threat of sudden judicial or self-help repossession of any of Leonard's basic necessities.

demonstrated unconscionability sufficient to overcome the FAA's policy favoring arbitration or the clear intention of the parties as expressed in the arbitration agreement.

Leonard also contends that the arbitration agreement is unenforceable for lack of consideration, citing *Jimenez v. Cintas Corp.*, 475 S.W.3d 679 (Mo. Ct. App. 2015), as support for his argument. While it is true that "legal consideration is essential for the formation of any contract, including one for arbitration," *id.* at 683, *Jimenez* is easily distinguishable from the present case as it merely holds that the promise of at-will employment, standing alone, is insufficient consideration to support an arbitration agreement signed by an employee. *Id.* at 685. Here, however, the agreement is supported by independent, adequate consideration, including DNCS' payment to Washington University of more than $1,000 for volunteer services, Leonard's admission into Busch Stadium, and a meal. *See*, *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 434 (Mo. banc 2015) (consideration can consist either in benefit conferred or in legal detriment to promisee); *Summers v. Service Vending Company, Inc.,* 102 S.W.3d 37, 41 (Mo. Ct. App. 2003) (agreement of mutual promises imposing duty or liability on each party is sufficient consideration). That Leonard negotiated for the money to be paid to Washington University does not negate the adequacy of the consideration. *See* Restatement (Second) of Contracts § 71(4) (1981) (consideration "may be given to

the promisor or to some other person.").

Finally, Leonard argues that even if the parties' arbitration agreement is valid, his fraud claim (Count IV) falls outside the scope of it and must be litigated in court. Count IV asserts that DNCS fraudulently represented to Leonard and other volunteers that "its vending services had a charitable purpose." Leonard claims he and other volunteers relied on this misrepresentation in willingly agreeing to "provid[e] labor" without receiving compensation. In his opposition to the motion to compel, Leonard relies on *Riley v. Lucas Lofts Investors, LLC* in arguing that for a tort claim to be subject to an arbitration clause, it must raise an issue "the resolution of which requires reference to or construction of some portion of the parties' contract." 412 S.W.3d 285, 291 (Mo. Ct. App. 2013). Leonard's reliance on *Riley* is misplaced because the *Riley* court applied the Missouri Uniform Arbitration Act. Here, I must analyze applicability of the arbitration clause to Leonard's fraud claim under the FAA.

"There is a strong national policy in favor of arbitration." *CD Partners, LLC v. Grizzle,* 424 F.3d 795, 800 (8th Cir. 2005). And "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "[b]roadly worded arbitration clauses . . . are generally construed to cover tort suits

arising from the same set of operative facts covered by a contract between the parties to the agreement." *CD Partners*, 424 F.3d at 800 (arbitration clause covering any claim arising out of or relating to the operation of a franchised business was sufficient to include a fraudulent misrepresentation claim made by franchisee against principals of franchisor); s*ee also PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836-37 (8th Cir. 2010) (finding arbitration clause covering "all disputes arising under" the agreement was "generally broad" in scope and holding that arbitration may be compelled "as long as the underlying factual allegations simply touch matters covered by the arbitration provision"); *3M Co. v. Amtex Sec., Inc.,* 542 F.3d 1193, 1199 (8th Cir. 2008) (implying that clauses requiring arbitration of "any" or "all" disputes should be interpreted extensively").

As noted above, the arbitration clause in Leonard's volunteer agreement provided that he agreed to "submit *any dispute arising from* [his volunteer fundraising and labor activities] to binding arbitration." (emphasis added). Leonard's claim that he relied on a fraudulent misrepresentation in agreeing to participate in "volunteer fundraising and labor activities" arises from those activities and "touches on matters covered by" the arbitration provision. *PRM Energy*, 592 F.3d at 836-37. To the extent any uncertainty remains, I am required to resolve the question in favor of arbitration. *MedCam,* 414 F.3d at 975. Therefore, I conclude that Count IV is encompassed by the arbitration clause and

must be submitted to arbitration along with Leonard's remaining claims.

"[W]here all the claims against all parties are subject to arbitration, dismissal of the action is proper." *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 943 (E.D. Mo. 2015) (citing *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991)). Therefore, I will grant DNCS' request to dismiss, rather than stay, the action.[6] Finally, because I am compelling Leonard to arbitrate his claims, his requests to amend the complaint will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to compel arbitration and dismiss [27] is granted, and plaintiff must submit his claims to arbitration.

**IT IS FURTHER ORDERED** that plaintiff's motion to amend [40] and first amended motion to amend [41] are denied as moot.

**IT IS FURTHER ORDERED** that plaintiffs' complaint is dismissed without prejudice.

A separate Order of Dismissal in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 11th day of July, 2016.

---

[6] Leonard did not address DNCS' request that I dismiss rather than stay the action, so he presumably consents to a dismissal of the action in the event that I compel arbitration.